1

2

3

4

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

5

6

7  POOR BOY PRODUCTIONS et al.,

8          Plaintiffs,                              3:14-cv-00633-RCJ-VPC

9       vs.

10  JOHN FOGERTY,                                   **ORDER**

11          Defendant.

12

13         This case arises out of a band member's alleged unlawful use of the trademarked name of

14  the band, as well as his alleged violation of a settlement agreement concerning use of the mark.

15  Pending before the Court is a Motion to Dismiss or Transfer (ECF No. 9).  For the reasons given

16  herein, the Court grants the motion in part and transfers the case to the U.S. District Court for the

17  Central District of California.

18  **I.      FACTS AND PROCEDURAL HISTORY**

19         Plaintiff rock band Creedence Clearwater Revival ("CCR") exists in law as a partnership

20  between Plaintiffs Douglas Clifford, Stuart Cook, Patricia Fogerty (the widow of deceased band

21  member Tom Fogerty), and Defendant John Fogerty. (Compl. ¶¶ 5, 10, ECF No. 1).  CCR owns

22  U.S. Trademark Reg. No. 1222931 for "Creedence Clearwater Revival" (the "Mark"). (*Id.* ¶ 11).

23

24

1 of 16

In 1996, Defendant sued the other members of CCR and Plaintiff Poor Boy Productions, Inc. ("Poor Boy") in the U.S. District Court for the Central District of California seeking an injunction against their performance under the name "Creedence Clearwater Revisited." (*Id.* ¶ 12).  The parties ultimately entered into an agreement (the "Settlement Agreement") that Defendant would withdraw his objection to the other band members' performances under the name "Creedence Clearwater Revisited," Poor Boy would pay Defendant royalties for the use of that name, and the other band members would not license any third party to perform under the names "Creedence," "Creedence Clearwater," or any derivative of those names without Defendant's prior written permission. (*Id.* ¶¶ 12–13).

On July 9, 2011, Defendant publicly condemned Poor Boy's, Clifford's, and Cook's use of the "Creedence Clearwater Revisited" name in an online article (the "Article") for the website Ultimateclassicrock.com. (*Id.* ¶ 14).  Thereafter, Poor Boy's counsel sent Defendant's counsel a letter (along with royalty checks due at that time) demanding "cessation of Fogerty's malfeasance and breach of the Settlement Agreement." (*Id.* ¶ 15).  The Article was still available online as of the date of the Complaint. (*Id.*).  Defendant has also used the Mark without CCR's permission and has demanded all royalties owing from December 2011 to present. (*Id.* ¶¶ 16, 19).

Plaintiffs have sued Defendant in this Court for: (1) trademark infringement under 15 U.S.C. § 1114(a); (2) false advertising under § 1125(a); (3) common law unfair competition; (4) declaratory judgment as to Plaintiffs' non-breach of the Settlement Agreement; (5) Defendant's breach of the Settlement Agreement; (6) Defendant's breach of the implied covenant of good faith and fair dealing as to the Settlement Agreement; (7) and breach of fiduciary duty.

1  Defendant has asked the Court to dismiss for lack of personal jurisdiction over him in Nevada,

2  or, in the alternative, to transfer the case to the U.S. District Court for the Central District of

3  California under 28 U.S.C. § 1404(a).

4  **II.      LEGAL STANDARDS**

5          A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P.

6  12(b)(2).  Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction

7  comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir.

8  1980).  When no federal statute governs personal jurisdiction, a federal court applies the law of

9  the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where a state

10  has a "long-arm" statute providing its courts jurisdiction to the fullest extent permitted by the

11  Due Process Clause of the Fourteenth Amendment, as Nevada does, *see Arbella Mut. Ins. Co. v.*

12  *Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a

13  court need only address federal due process standards, *see Boschetto*, 539 F.3d at 1015.

14  Technically, Nevada's long-arm statute restricts extra-territorial jurisdiction to the limits of both

15  the U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1).  But Nevada's Due Process

16  Clause is textually identical to the Due Process Clause of the Fourteenth Amendment in relevant

17  respects, *compare* U.S. Const. amend. XIV, § 1, *with* Nev. Const. art. 1, § 8(5), and the Nevada

18  Supreme Court reads the state clause as coextensive with the federal clause, *see, e.g.*, *Wyman v.*

19  *State*, 217 P.3d 572, 578 (Nev. 2009).  Until the Fourteenth Amendment was adopted in 1868, no

20  federal due process clause applied to the states. *See Barron v. City of Baltimore*, 32 U.S. 243,

21  250–51 (1833) (Marshall, C.J.).  The Declaration of Rights comprising Article I of the Nevada

22  Constitution, which was adopted in 1864, was included in order to impose certain restrictions on

23

24

the State of Nevada that were already imposed against the federal government under the Bill of

Rights, and the Nevada Supreme Court has not interpreted the protections of the Declaration of

Rights to exceed the scope of their federal counterparts. Michael W. Bowers, *The Sagebrush*

*State* 43–44 (3rd ed., Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State*

*Constitution* 24 (1993).  In summary, the exercise of personal jurisdiction in Nevada need only

comport with the Due Process Clause of the Fourteenth Amendment.

### A.     General Jurisdiction

There are two categories of personal jurisdiction: general jurisdiction and specific

jurisdiction.  In the mid-to-late-Twentieth Century, the federal courts developed a rule that

general jurisdiction existed over a defendant in any state with which the defendant had

"substantial" or "continuous and systematic" contacts such that the assertion of personal

jurisdiction over him would be constitutionally fair even where the claims at issue were unrelated

to those contacts. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006)

(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).  A state

court has general jurisdiction over the state's own residents, for example.  The Supreme Court

recently clarified, however, that general jurisdiction exists only where the defendant is at "home"

in the forum state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–62 (2014).  The Court noted

that "continuous and systematic" contacts alone are not enough to create general jurisdiction

without more. *See id.*  The quoted phrase was in fact first used in the context of a specific

jurisdiction analysis. *See id.* at 761 (citing *Int'l Shoe Co. v. State of Wash., Office of*

*Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)).  "Accordingly, the inquiry

under *Goodyear* is not whether a foreign [defendant's] in-forum contacts can be said to be in

some sense 'continuous and systematic,' it is whether that [defendant's] 'affiliations with the State are so "continuous and systematic" as to render [the defendant] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

## B.   Specific Jurisdiction

Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient contacts with the forum state such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The standard has been restated using different verbiage. *See World-wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").  From these cases and others, the Court of Appeals has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

1

2

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

3

802 (9th Cir. 2004)) (internal quotation marks omitted).

4

5

6

7

> The plaintiff bears the burden on the first two prongs.  If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable.  But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted).

8

The "purposeful direction" option of the first prong uses the "*Calder*-effects" test, under

9

10

which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed

at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

11

state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)

12

(quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206

13

(9th Cir.2006) (en banc)).  The tortious activity must be aimed at a forum state to create personal

14

jurisdiction over a defendant in that state; it is not enough that the activity occurs in another state

15

but causes harm known or expected by the defendant to be felt by a resident of the forum state in

16

the forum state.  The second and third prongs of the *Calder*-effects test are conjunctive, not

17

disjunctive.  That is, a defendant must not only cause harm to a person who he knows will feel a

18

"judicially sufficient amount of harm" in the forum state (the third prong), *see Yahoo! Inc.*, 433

19

F.3d at 1207, the intentional activity must be directed to the forum state itself (the second prong).

20

Activity is not "aimed at" a forum state merely because it is expected that its effects will be felt

21

there, otherwise the third prong of the *Calder*-effects test would swallow the second.  The prongs

22

are distinct and conjunctive.

23

24

The Supreme Court has recently reaffirmed that "purposeful direction" or "express aiming" is not satisfied merely by a defendant committing an intentional tort against a plaintiff he knows is a resident of the forum state and that the effects of the act will be felt in that state. *See Walden v. Fiore*, 134 S. Ct. 1115, 1124 (2014) (reinstating Judge Reed's ruling, after reversal by the Court of Appeals, that there was no personal jurisdiction in Nevada over Georgia defendants who allegedly committed an intentional tort in Georgia against a person they knew was a Nevada resident where the tortious activity had no other connection to Nevada) ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in *Walden*)).  In *Calder* itself, not only was it known that the effects of the libelous article would be felt in California (because the defendant knew the plaintiff resided there), but the article was also expressly aimed at California (because the defendant in fact circulated the article there). *See Calder v. Jones*, 465 U.S. 783, 784, 789–90 (1984).  That is, the effects of the libel did not merely find their way to the California plaintiff in a way the defendant should have anticipated after libeling her in another state; rather, the defendant actually libeled the plaintiff in California by causing the circulation of the article in that state. *See id.*

The third prong is a seven-factor balancing test, under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)) (internal quotation marks omitted).

**III.     ANALYSIS**

There appears to be no dispute that Defendant is a California resident and that there is therefore no general jurisdiction over him in Nevada.  The parties dispute whether there is specific jurisdiction over him in Nevada as to the claims in this case.  The Court finds that there is no specific jurisdiction over Defendant as to any claims over which the Court has original jurisdiction over the subject matter.  Therefore, even assuming there were specific jurisdiction over Defendant as to one or more of the state law claims over which the Court has only supplemental jurisdiction over the subject matter—and that is doubtful—the Court is compelled to dismiss or transfer the case.

**A.     Personal Jurisdiction as to the Federal Claims**

There is no specific jurisdiction over Defendant as to the federal claims under §§ 1114(a) and 1125(a).  The nationwide service rule does not apply because the courts of California have general jurisdiction over Defendant. *See* Fed. R. Civ. P. 4(k)(2).  Plaintiffs therefore admit that there must be specific jurisdiction over Defendant based on his contacts with Nevada, not simply based on his contacts with the United States.  But the only purposeful direction alleged in the response is that Defendant knew that Plaintiffs Clifford and Poor Boy were Nevada residents and that he purposely put the Mark on certain concert advertising and merchandise offered over the Internet.  None of that is enough.

First, knowledge that a potential plaintiff is a resident of the forum is not enough. *Walden*, 134 S. Ct. at 1124.  The acts must be directed to the forum itself.  The evidence adduced of concert advertising that included any variation of the Mark shows that it was directed variously to Argentina, California, and other unspecified venues in the United States. (Clifford

1    Decl. ¶¶ 19, 21, ECF No. 13-1; Advertisements, ECF No. 13-4 to 13-5, 13-8; 13-11).  No

2    evidence is adduced of any materials containing the Mark having been used to advertise any

3    event in Nevada.  Nor is any evidence adduced of the distribution in Nevada of any materials

4    containing the Mark to advertise events in other venues.  Plaintiffs' citation to *Washington Shoe*

5    *Co. v. A–Z Sporting Goods, Inc.*, 704 F.3d 668 (9th Cir. 2012) is unavailing, because the holding

6    there was based on the knowledge-of residency-and-impact theory since abrogated by *Walden*.

7         Second, there is no evidence of Nevada-specific design or targeting as to the merchandise

8    generally available on the Internet. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780,

9    2791–92 (2011) (Breyer, J., concurring) (controlling opinion).  And this is not an "exceptional

10   case" where Defendant is "subject to the jurisdiction of the courts of the United States but not of

11   any particular State." *J. McIntyre Mach., Ltd.*, 131 S. Ct. at  2789 (plurality opinion).  Rather,

12   "[D]efendant is a domestic domiciliary, [so] the courts of [his] home State are available and can

13   exercise general jurisdiction." *Id.*  Even before *Nicastro*, the Court of Appeals had ruled that in

14   the Internet context the maintenance of a website or internet advertisement alone is not enough to

15   subject a party to personal jurisdiction in the forum; rather, there must be "something more" to

16   "indicate that the defendant purposefully (albeit electronically) directed his activity in a

17   substantial way to the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th

18   Cir. 1998) (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)) ("We

19   held the Arizona court could not exercise personal jurisdiction over Cybersell FL, because it had

20   no contacts with Arizona other than maintaining a web page accessible to anyone over the

21   Internet."); *accord Boschetto*, 539 F.3d at 1020–22 (Rymer, J., concurring) ("I write separately

22   to underscore my disagreement with Boschetto's argument that Hansing, as a seller on eBay,

23

24

necessarily availed himself of the privilege of doing business in each state across the nation.  I

believe that a defendant does not establish minimum contacts nationwide by listing an item for

sale on eBay; rather, he must do 'something more,' such as individually targeting residents of a

particular state, to be haled into another jurisdiction. . . . As we have previously held, merely

advertising over the Internet is not sufficient to confer jurisdiction throughout the United States,

even though the advertisement or website at issue may be viewed nationwide").

### B.       Pendent Personal Jurisdiction

There is no original jurisdiction over the state law claims, because Defendant is a

member of Plaintiff CCR.  A partnership has the citizenship of each of its members for the

purposes of diversity, *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990), so there is no

diversity jurisdiction over the state law claims, *see* 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*,

7 U.S. 267, 267–68 (1806).  There is only potentially supplemental jurisdiction over those claims

under § 1367.

The Court is compelled to find as a matter of discretion in the present case, if not as a

matter of law, that pendent personal jurisdiction only emanates from claims over which a court

has original subject matter jurisdiction.  The Court will therefore not closely analyze whether

there is personal jurisdiction over Defendant in Nevada as to the state law claims, although there

likely is not.  Although the Court of Appeals has not explicitly limited the doctrine of pendent

personal jurisdiction to the fact pattern, its pendent personal jurisdiction cases all appear to be

based on the existence of personal jurisdiction as to at least one claim over which the district

court had original subject matter jurisdiction. *See Wash. Shoe Co.*, 704 F.3d at 673 (personal

jurisdiction as to one federal claim); *Fiore v. Walden*, 688 F.3d 558, 586–87 (9th Cir. 2011)

1    (same), *rev'd on other grounds*, *Walden*, 134 S. Ct. 1115; *CollegeSource, Inc. v. AcedemyOne,*

2    *Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (personal jurisdiction as to one state law claim over

3    which there was diversity jurisdiction); *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d

4    1107, 1111–13 (9th Cir. 2004) (same); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368

5    F.3d 1174, 1180–91 (9th Cir. 2004) (personal jurisdiction as to federal claims) ("Pendent

6    personal jurisdiction is typically found where one or more federal claims for which there is

7    nationwide personal jurisdiction are combined in the same suit with one or more state or federal

8    claims for which there is not nationwide personal jurisdiction. . . . [T]he actual exercise of

9    personal pendent jurisdiction in a particular case is within the discretion of the district court.").

10   And every reported case the Court has been able to find from the other courts of appeals to use

11   the phrase "pendent personal jurisdiction" has applied the doctrine only to pendent claims where

12   personal jurisdiction existed as to an original jurisdiction claim, typically based on a federal

13   nationwide service of process statute or rule, but sometimes based on ordinary service under

14   state law in a diversity case.

15          The Court finds that applying the doctrine of pendent personal jurisdiction "backwards"

16   would not be a reasonable application of the doctrine.  Judge Jackson of the District of Colorado

17   recently articulated the Court's concerns:

18            One question the Court grappled with a bit in ruling on this motion is
      whether the Court could (or should) keep the action given that the state law claims
19    likely give rise to specific jurisdiction over the defendant.  Could they in turn
      provide "pendent personal jurisdiction" with respect to the federal claims?  The
20    problem is that the Court has only been asked to assert supplemental jurisdiction
      over the state law claims, not original jurisdiction.  Thus, the Court would be
21    using claims over which it has no original jurisdiction to establish personal
      jurisdiction with respect to claims as to which the Court has original jurisdiction
22    but no personal jurisdiction.

23

24

1

2

3

4

5

6

7

8

9

     A Tenth Circuit decision, *United States v. Botefuhr*, 309 F.3d 1263 (10th Cir. 2002), while not directly on point, is quite helpful in thinking about this issue. There, the Tenth Circuit was presented with the question of whether a district court abused its discretion in maintaining a cause of action over which it had only asserted pendent personal jurisdiction after the claim over it which it asserted specific personal jurisdiction had been voluntarily dismissed by the parties. "Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Id.* at 1272 (citations omitted).  This first claim is considered the "anchor claim." *See id.* at 1274.  "In essence, once a district court has personal jurisdiction over a defendant for [the anchor] claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *Id.* at 1272.

10

11

12

13

14

     The choice of whether to exercise pendent personal jurisdiction over a claim is left to the discretion of the court. *Id.* at 1273.  However, complications arise where the Court loses the anchor claim.  By way of analogy, the *Botefuhr* court explains that when a district court dismisses federal claims and thereby leaves only supplemental state claims, courts most commonly dismiss the supplemental claims. *See id.* at 1273–74.  Using this analogy, the Tenth Circuit panel found that the district court abused its discretion when it kept a pendent claim after the parties voluntarily dismissed the anchor claim as "there was no claim before the district court for which it could be said [the defendants] had 'minimum contacts' with [the forum State]." *Id.* at 1274.

15

16

17

18

19

20

     The problem that arises here is that the state law and federal claims are mutually dependent.  Without the state law claims, there would be no personal jurisdiction over the defendant.  And without the federal claims, there would be no subject matter jurisdiction over the state law claims.  Technically, I suppose I could find that the actions are so interconnected that each type of claim, and thus each type of jurisdiction, holds the other up, a tension bar of sorts.  However, I'm not persuaded.  The exercise of pendent personal jurisdiction is discretionary.  In a case such as this, where neither set of claims could survive on its own, it feels fundamentally unfair to rely on each set of independently deficient claims to subject the defendant to jurisdiction in Colorado.

21

22

     More importantly, it seems logically inapt to look past the claims over which this Court asserts original jurisdiction in order to determine whether it can maintain those claims.  Independently analyzing the federal claims, the Court

23

24

1

2

must dismiss this action for lack of personal jurisdiction.   In turn, the supplemental state law claims must likewise be dismissed.

*Leachman Cattle of Colo., LLC v. Am. Simmental Assoc.*, --- F. Supp. 3d ----, 2014 WL 4458893,

3

4

at *8–9 (D. Colo. 2014).

5

The "reverse" application of the pendent jurisdiction rule would mean that a federal

6

district court has both subject matter jurisdiction and personal jurisdiction as to all claims arising

7

out of the same set of operative facts so long as the court has original subject matter jurisdiction

8

over one of the claims and personal jurisdiction over the defendant as to any of the other claims.

9

Although the Court has subject matter jurisdiction over the federal claims in this case, exercising

10

jurisdiction over Defendant purely because there is personal jurisdiction over him as to

11

supplemental claims over which the Court does not have original jurisdiction would be an

12

unreasonably broad reading of § 1367 flying in the face of the presumption against federal

13

jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  That is,

14

in addition to the fairness concerns under the Due Process Clause, "reverse" application of the

15

doctrine of pendent personal jurisdiction would permit a federal court in cases like the present

16

one to exercise jurisdiction over federal claims based purely on the presence of state law claims.

17

As to the "traditional" application of the pendent personal jurisdiction doctrine, where there is

18

personal jurisdiction as to an original-jurisdiction claim, the intent of Congress to broaden the

19

scope of the assertion of personal jurisdiction (within its constitutional limits) to supplemental

20

claims can be reasonably inferred from § 1367.  No such intent can be inferred form the statute

21

as to "reverse" application of the doctrine.

22

Insofar as the doctrine is a matter of federal common law not dependent on any

23

interpretation of § 1367, the purposes behind the doctrine are judicial economy, convenience,

24

13 of 16

and fairness to the parties. *See Action Embroidery Corp.*, 368 F.3d at 1181.  In a case such as the present one, where the court's subject matter jurisdiction over the only claims giving rise to personal jurisdiction is not original but supplemental, the Court finds that fairness to the nonresident Defendant counsels dismissal or transfer of the case.  The interests of judicial economy and convenience could be argued to favor application of pendent personal jurisdiction here, because the copyright claim may not be brought in state court, *see* 28 U.S.C. §1338(a), meaning Plaintiffs would have to maintain two lawsuits, one in federal court in California and one in state court in Nevada, potentially with inconsistent resolutions of common questions of fact, if they insisted on maintaining the state law claims in Nevada.  But that can easily be avoided by transfer of the entire case to a forum where there is both subject matter and personal jurisdiction over Defendant as to the federal claims, as well as both supplemental subject matter jurisdiction and not only "traditional" pendent jurisdiction but actual personal jurisdiction over the state law claims.  A transfer therefore furthers the interests of fairness and judicial economy, only at the expense of the convenience of two of the five Plaintiffs, who reside in Nevada.  For the remaining Plaintiffs, who are citizens of California, Arizona, and Texas, however, the Los Angeles venue will actually be slightly more convenient to attend.  Overall, therefore, the result is in the interest of the convenience of the parties, as well.

### C.      Venue

The Court's decision is bolstered by the apparent lack of venue in this District.  Although Defendant asks in the alternative to dismissal for a transfer under 28 U.S.C. § 1404(a), the Court finds that § 1406(a) applies.  Where venue is lacking, a court must dismiss or transfer under

§ 1406(a).[1]  This is the case whether or not there is personal jurisdiction over the Defendant. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).  First, it is not disputed that Defendant does not reside in this District. *See* 28 U.S.C. § 1391(b)(1).  Second, as noted, *supra*, neither the allegations nor the evidence adduced indicate that a substantial part of the events or omissions giving rise to any of the claims occurred in Nevada. *See id.* § 1391(b)(2).  The only allegations of Defendant's acts in Nevada are that he performed in Las Vegas in October 2014, (*see* Compl. ¶ 2), but he is not alleged to have used the Mark in connection with that performance, Defendant's manager attests that he did not, (*see* Robert Fogerty Decl. ¶ 8, ECF No. 10), and Plaintiffs have provided no contrary evidence in rebuttal.  The only allegations or evidence of Defendant having used the Mark concern promotional materials for his performances in California, abroad, and in unspecified U.S. locations, as well as in advertisements on the Internet for various merchandise, (*see* Compl. ¶ 16 & Ex. D; Clifford Decl. ¶¶ 19, 21; Advertisements, ECF No. 13-4 to 13-5, 13-8; 13-11), without any "special [Nevada]-related design, advertising, advice, marketing, or anything else." *See J. McIntyre Mach., Ltd.*, 131 S. Ct. at 2791–92.[2]

Third, there is another district in which the case could have been brought, *see id.* § 1391(b)(3), because Defendant resides in the Central District of California, which fact provides both personal

---

1 The difference between § 1404(a) and § 1406(a) transfers matters because it affects the choice of law analysis as to the state law claims. *See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966–67 (9th Cir. 1993).

2 *Nicastro* was a personal jurisdiction case, but if some state-specific targeting is required to show "purposeful direction" as to personal jurisdiction even where it is suspected that a product is likely to end up in a given state, it is difficult to see how a plaintiff can show in the absence of state-specific targeting that an event actually "occurred" in the state under § 1391(b)(2).  Much more probably, the Supreme Court would consider internet advertisements to have "occurred" in the state where the offending party sits when he posts them, or perhaps where his servers are located, and there is no allegation or evidence adduced in this case that any of these places was Nevada.

jurisdiction in California, *see Daimler AG*, 134 S. Ct. at 760–62, and venue in the U.S. District Court for the Central District of California, *see* 28 U.S.C. § 1391(b)(1).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss or Transfer (ECF No. 9) is GRANTED IN PART, and the case is TRANSFERRED to the U.S. District Court for the Central District of California under 28 U.S.C. § 1406(b).

IT IS SO ORDERED.

Dated this 26th day of August, 2015.

_____
ROBERT C. JONES
United States District Judge

16 of 16